UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:02-cr-00018-JMS-CMM-13 |
| | ) |
| WILLIAM CHARLES GRAY, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Pending before the Court is William Gray's Motion for Compassionate Release, [Filing No. 96], filed pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub L. No. 115-391, § 603, 132 Stat. 5194, 5239. Mr. Gray asks the Court to reduce his currently-imposed life sentence and order that he be released on conditions to his daughter's home in Arizona. For the reasons set forth below, the Court **GRANTS** Mr. Gray's Motion.

**I.**
**BACKGROUND**

On August 28, 2003, Mr. Gray was sentenced to life imprisonment after a jury found him guilty of conspiracy to possess with intent to distribute methamphetamine. [Filing No. 39.] Since then, Mr. Gray has been in the custody of the Bureau of Prisons (the "BOP"). On June 26, 2019, Mr. Gray filed a motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). [Filing No. 96.]

Mr. Gray is 64 years old and in poor health. In late October of 2018 he was diagnosed with hepatocellular carcinoma—liver cancer—and is scheduled to begin treatment in late September or early October of 2019. [Filing No. 108; Filing No. 110 at 1.] Additionally, he has long suffered several "chronic debilitating medical conditions," including: (1) Type 2 Diabetes; (2)

1

Hypertension; (3) Hyperlipidemia; (4) chronic constipation; and (5) Hepatitis C. [Filing No. 110 at 1.] As a result of these conditions, Mr. Gray has been in and out of the hospital multiple times in the past several months. Beginning January 3, 2019, he was hospitalized for sixteen days with acute abdominal pain, vomiting, and constipation. [Filing No. 11-1 at 6-13.] Upon his return to prison from the hospital, his condition deteriorated and he returned to the hospital temporarily. [Filing No. 11-1 at 13.] On January 23, Mr. Gray was again admitted to the hospital and presented with abdominal distention, liver cirrhosis (scarring), anasarca (swelling), and shortness of breath. [Filing No. 111-1 at 19.] He remained hospitalized for fourteen days. [Filing No. 111-1 at 14-21.] Two days after being discharged, Mr. Gray again returned to the hospital with severe abdominal pain, nausea, and constipation. [Filing No. 111-1 at 23.] He was released three days later. [Filing No. 111-1 at 24.] Throughout this time, Mr. Gray's weight fluctuated drastically—on January 3, he weighed 140 pounds; on January 23, he was up to 163 pounds; and on February 11, he weighed only 128 pounds. [Filing No. 111-1 at 15; Filing No. 111-1 at 27.]

Mr. Gray has since been hospitalized for multiple additional procedures. On May 18, 2019, he underwent surgery to repair an inguinal hernia. [Filing No. 110 at 3.] Then, on June 20, 2019, he underwent transarterial chemoembolization of a liver tumor—a form of cancer treatment. [Filing No. 110 at 3.] On September 9, 2019, Mr. Gray was hospitalized again for significant edema and fluid buildup in his liver. [Filing No. 113.] Mr. Gray remains hospitalized as of this date and is scheduled for surgery in the very near future. [Filing No. 113.]

## II.
### DISCUSSION

Mr. Gray argues that the Court should order that he be released based upon his serious medical conditions. [Filing No. 96.] In response, the Government disputes Mr. Gray's

characterization of his medical conditions and argues that, regardless, compassionate release is not appropriate because Mr. Gray has not exhausted his administrative remedies. [Filing No. 109.]

18 U.S.C. § 3582(c) provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>     **(i)** extraordinary and compelling reasons warrant such a reduction . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), contained in U.S.S.G. § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants—rather than solely the BOP—may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant—either the defendant or the BOP—should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must determine whether

Mr. Gray has exhausted his administrative rights to appeal a failure of the BOP to bring a motion on his behalf for compassionate release or alternatively, whether 30 days have lapsed since the warden of Mr. Gray's prison received such a request. 18 U.S.C. § 3582(c)(1)(A). Second, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (B)(3). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

### A. Exhaustion of Administrative Remedies

The Government first argues that Mr. Gray has "not fully exhausted his administrative rights," and therefore, the Court should deny his motion. [Filing No. 109 at 3.] According to the Government, "[a] defendant bringing a motion for compassionate release under the First Step Act must demonstrate that he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons . . . to bring a motion on the defendant's behalf . . . .'" [Filing No. 109 at 2] (quoting 18 U.S.C. § 3582(c)(1)(A)). But in its response brief in opposition, the Government entirely ignores the second clause of § 3582(c)(1)(A), which provides an alternative where the defendant's motion has been made after the "lapse of 30 days from the receipt of [a request that the BOP move for such modification] by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). This second situation is presented here.

As the Government's own filings show, the warden of Mr. Gray's warden received such a request on January 28, 2019. [Filing No. 109 at 2.] The warden responded to the request—and denied it—on March 22, 2019, significantly longer than 30 days after the warden received the request. [Filing No. 109 at 2.] Therefore, Mr. Gray need not have exhausted his administrative remedies before the filing his motion on June 26, 2019. [Filing No. 96.]

### B. Extraordinary and Compelling Reasons

The Government next argues that Mr. Gray has failed to meet his burden of proving that "extraordinary and compelling reasons exist that warrant a reduction in his sentence." [Filing No. 109 at 3.] The Court must base its decision on whether "extraordinary and compelling reasons warrant" compassionate release in light of the policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The Application Notes to the policy statement contained in § 1B1.13 provide, in part:

> **1. Extraordinary and Compelling Reasons.—** . . . [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:
> **(A) Medical Condition of the Defendant.—**
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> **(ii)** The defendant is—
> **(I)** suffering from a serious physical or medical condition,
> **(II)** suffering from a serious functional or cognitive impairment, or
> **(III)** experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> **(B) Age of the Defendant.—**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
> . . .
> **2. Foreseeability of Extraordinary and Compelling Reasons.—**For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

The crux of the Government's argument is based on the BOP's July 31, 2019 review of Mr. Gray's medical records and his then-current medical condition. [Filing No. 109 at 3.] According to the BOP, Mr. Gray was required to meet three conditions to be "eligible for consideration for Reduction in Sentence." [Filing No. 110 at 3.] The BOP doctor who wrote the report, Dr. Villalon, found that Mr. Gray satisfied two of the conditions: (1) he suffers from "chronic or serious medical conditions related to the aging process," and (2) "[c]onventional treatment promises no substantial improvement to [Mr. Gray's] mental or physical condition." [Filing No. 110 at 3.] But, according to Dr. Villalon, Mr. Gray did not satisfy the third condition because he was not experiencing any "deteriorating physical or mental health that diminishe[d] his ability to function in a correctional setting." [Filing No. 110 at 3.] Therefore, according to the Government, Mr. Gray has failed to establish that "extraordinary and compelling reasons exist that warrant a reduction in his sentence." [Filing No. 109 at 3.]

But the standard is not whether Mr. Gray suffers from "deteriorating physical or mental health that diminishes his ability to *function* in a correctional setting." [Filing No. 110 at 3 (emphasis added).] Rather, the Court must determine whether Mr. Gray is suffering from a serious physical or medical condition or experiencing deteriorating physical or mental health because of the aging process that substantially diminishes his ability to *provide self-care* within the environment of a correctional facility. *See* U.S.S.G. § 1B1.13 (emphasis added).

Though the Court does not question the validity or accuracy of Dr. Villalon's analysis and diagnosis, the Court recognizes that Dr. Villalon prepared his report and determinations in July—prior to Mr. Gray's August CT Scan and September hospitalization and surgery. Regardless of Mr. Gray's condition in July, he is now suffering from serious physical and medical conditions and/or experiencing deteriorating physical health because of the aging process to an extent that

6

diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. Since Dr. Villalon's report, Mr. Gray's legs have swollen to such an extent that he can hardly walk without assistance, he is suffering from significant liver issues which required hospitalization, and he has been scheduled for surgery and chemotherapy. [Filing No. 112 at 7; Filing No. 113.] In the past year, Mr. Gray's weight dramatically fluctuated (140 pounds, to 163 pounds, to 128 pounds) over a span of forty days, he has had frequent vomiting spells, and has had various bowel-movement issues. [Filing No. 111-1.] Whether Mr. Gray can "function" in spite of his medical condition is inconsequential. It is clear that Mr. Gray cannot provide self-care within a correctional setting.

To the extent the Government argues that it has not had a chance to submit arguments based on the medical records filed subsequent to its brief, the Court is unpersuaded. Mr. Gray was sentenced in 2003—any medical treatment Mr. Gray has received must have been administered by the BOP or obtained with the BOP's cooperation.[1]

---

[1] The filings related to this motion have been unusual. On June 26, Mr. Gray filed the Motion for Compassionate Release. [Filing No. 96.] Though the motion itself detailed Mr. Gray's medical condition, there were no medical records filed with the motion. Mr. Gray filed a supplement to the motion on July 22. [Filing No. 101.] That supplement provided an update on Mr. Gray's condition, but again came without medical records. Mr. Gray filed another supplement on August 26, again updating the Court on Mr. Gray's status and condition. [Filing No. 108.] And again, no medical records were filed. On September 10, the Government filed its response in opposition and attached minimal medical records. [Filing No. 109.] The Government also attached Dr. Villalon's physician's note. Though filed in September, Dr. Villalon's note was dated July 31 and therefore could not have included many of the developments referenced in Mr. Gray's supplements. Finally, on September 11, Mr. Gray filed a third supplement, this time with medical records. [Filing No. 111.] However, Mr. Gray apparently intended to file these medical records in early July. Therefore, they too did not address or include any of the August or September developments. Mr. Gray has since filed a reply and yet another supplement updating the Court on Mr. Gray's worsening medical condition, but yet again no medical records were attached. [Filing No. 112; Filing No. 113.] The Court recognizes that obtaining up-to-date medical records is not an easy task, especially where the patient is incarcerated within the BOP system. Between the medical records that have been filed, and the updates contained within Mr. Gray's supplements,

7

## C. Section 3553(a) Factors

Though the parties do not expressly address the factors set forth in 18 U.S.C. § 3553(a), the Court concludes that the applicable factors support Mr. Gray's release. Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence[s] and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court acknowledges that Mr. Gray's conduct in this case was very serious. But Mr. Gray has been incarcerated for nearly two decades; that is a significant sanction. And the Court will impose lifetime supervision following release, which will continue to serve as a sanction and general deterrent, appropriately recognizing the seriousness of Mr. Gray's conduct. But further

---

the Court has been informed of Mr. Gray's medical condition to a degree sufficient to make its decision.

incarceration is not needed to deter Mr. Gray from further offenses. In fact, Mr. Gray has spent a significant portion of the past several months—and apparently will spend a significant portion of the next several months and perhaps the remainder of his life—inside of hospitals, not physically incarcerated within a correctional facility. Mr. Gray has served much of his sentence while seriously ill. This means that his sentence has been significantly more laborious and difficult than that served by most inmates. It also means that further incarceration in his condition would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2). Furthermore, Mr. Gray's co-defendant, Oscar McGraw, was granted compassionate release by this Court earlier this year. *See United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488 (S.D. Ind. May 9, 2019); 18 U.S.C. § 3553(a)(6). In sum, the Court concludes that the applicable § 3553(a) factors support Mr. Gray's request for compassionate release.

### III.
#### CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the Court finds that Mr. Gray filed his motion after a lapse of 30 days following the warden's receipt of a request for compassionate release, that extraordinary and compelling reasons warrant a reduction of Mr. Gray's sentence, that the § 3553(a) factors support a reduction, and that the reduction is consistent with the Sentencing Commission's policy statements. Therefore, the Court **GRANTS** Mr. Gray's Motion for Compassionate Release, [96], **ORDERS** that Mr. Gray's sentence of imprisonment be reduced to **time served**, and further **ORDERS** the BOP to release Mr. Gray for placement at his daughter's residence in Fort Mohave, Arizona, to be supervised for life. Mr. Gray also filed a motion to correct the Court's order granting the Government an extension of time in which to file its response to the Motion for Compassionate Release. [Filing No. 107.] The Government has since filed its response to the Motion for Compassionate Release. [Filing No. 109.] Therefore, the Court **DENIES AS MOOT**

9

Mr. Gray's motion to correct the Court's order granting the Government an extension of time. [107].

Mr. Gray is responsible for arranging his own transportation to Arizona, and he shall report to the U.S. Probation Office within 72 hours of his arrival in Arizona.

Finally, Mr. Gray's conditions of supervised release have been updated pursuant to current 7th Circuit case law, and are imposed as follows:

1) You shall report to the probation office in the judicial district to which you are released within 72 hours of release from the custody of the Bureau of Prisons. **Justification:** *The Court is imposing this condition as an administrative requirement of supervision.*

2) You shall report to the probation officer in a manner and frequency directed by the court or probation officer. **Justification:** *The Court is imposing this condition as an administrative requirement of supervision.*

3) You shall permit a probation officer to visit you at a reasonable time at home, or another place where the officer may legitimately enter by right or consent, and shall permit confiscation of any contraband observed in plain view of the probation officer. **Justification:** *The Court is imposing this condition to assist the probation officer in monitoring the defendant for protection of the community.*

4) You shall not knowingly leave the judicial district without the permission of the court or probation officer. **Justification:** *The Court is imposing this condition as an administrative requirement of supervision.*

5) You shall answer truthfully the inquiries by the probation officer, subject to your 5th Amendment privilege. **Justification:** *The Court is imposing this condition as an administrative requirement of supervision.*

6) You shall not meet, communicate, or otherwise interact with a person you know to be engaged, or planning to be engaged, in criminal activity. You shall report any contact with persons you know to be convicted felons to your probation officer within 72 hours of the contact. **Justification:** *The Court is imposing this condition to reduce the risk of recidivism and provide for public safety.*

7) You shall reside at a location approved by the probation officer and shall notify the probation officer at least 72 hours prior to any planned change in place or circumstances of residence or employment (including, but not limited to, changes in who lives there, job positions, job responsibilities). When prior notification is not possible, you shall notify the probation officer within 72 hours of the change. **Justification:** *The Court imposing this condition to assist the probation officer in monitoring the defendant for protection of the community.*

8) You shall not own, possess, or have access to a firearm, ammunition, destructive device or dangerous weapon. **Justification:** *The Court is imposing this condition to assist the probation officer in monitoring the defendant for protection of the community.*

9) You shall notify the probation officer within 72 hours of being arrested, charged, or questioned by a law enforcement officer. **Justification:** *The Court is imposing this condition to assist the probation officer in monitoring the defendant for protection of the community.*

10) You shall maintain lawful full time employment, unless excused by the probation officer for schooling, vocational training, or other reasons that prevent lawful employment. **Justification:** *The Court is imposing this condition to ensure the defendant maintains gainful employment and to reduce the risk of recidivism.*

11) You shall make a good faith effort to follow instructions of the probation officer necessary to ensure compliance with the conditions of supervision. **Justification:** *The Court is imposing this condition as an administrative requirement of supervision.*

12) You shall participate in a substance abuse or alcohol treatment program approved by the probation officer and abide by the rules and regulations of that program. The probation officer shall supervise your participation in the program (provider, location, modality, duration, intensity, etc.). The court authorizes the release of the presentence report and available evaluations to the treatment provider, as approved by the probation officer. **Justification:** *The Court is imposing this condition to address the defendant's history of methamphetamine abuse.*

13) You shall not use or possess any controlled substances prohibited by applicable state or federal law, unless authorized to do so by a valid prescription from a licensed medical practitioner. You shall follow the prescription instructions regarding frequency and dosage. **Justification:**

*The Court is imposing this condition to address the defendant's history of methamphetamine abuse.*

14) You shall not use or possess alcohol. **Justification:** *The Court is imposing this condition due to the defendant's history of methamphetamine abuse. It will also reduce the risk of recidivism and assist in his rehabilitation.*

15) You shall not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic marijuana, bath salts, Spice, glue, etc.) that impair a person's physical or mental functioning, whether or not intended for human consumption. **Justification:** *The Court is imposing this condition to address the defendant's history of methamphetamine abuse.*

16) You shall submit to substance abuse testing to determine if you have used a prohibited substance or to determine compliance with substance abuse treatment. Testing may include no more than 8 drug tests per month. You shall not attempt to obstruct or tamper with the testing methods. **Justification:** *The Court is imposing this condition to allow the probation officer to monitor the defendant's sobriety.*

17) You shall provide the probation officer access to any requested financial information and shall authorize the release of that information to the U.S. Attorney's Office for use in connection with the collection of any outstanding fines and/or restitution. **Justification:** *The Court is imposing this condition to assist the probation officer in verifying the legitimacy of the defendant's income, and to ensure the defendant is paying the maximum amount possible toward any fine.*

18) You shall submit to the search by the probation officer of your person, vehicle, office/business, residence, and property, including any computer systems and hardware or software systems, electronic devices, telephones, and Internet-enabled devices, including the data contained in any such items, whenever the probation officer has a reasonable suspicion that a violation of a condition of supervision or other unlawful conduct may have occurred or be underway involving you and that the area(s) to be searched may contain evidence of such violation or conduct. Other law enforcement may assist as necessary. You shall submit to the seizure of contraband found by the probation officer. You shall warn other occupants these locations may be subject to searches. **Justification:** *The Court is imposing this condition to assist the*

*probation officer in monitoring the defendant for protection of the community.*

19) You shall not be a member of any gang or associate with individuals who are members. **Justification:** *The Court is imposing this condition to assist the probation officer in monitoring the defendant for protection of the community.*

Date: 9/20/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution to via ECF only to all counsel of record.**